# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Gabriel Hudock and Gloria Hudock, : 
husband and wife, : 
               Appellants : 
                : 
          v. : No. 321 C.D. 2021
                : ARGUED: September 12, 2022
Saltlick Township, Pennsylvania and : 
Seven Springs Mountain Resort, Inc., : 
formerly known as Seven Springs Farm, Inc.: 

Gabriel Hudock and Gloria Hudock, : 
husband and wife : 
                : 
          v. : No. 391 C.D. 2021
                : 
Saltlick Township, Pennsylvania and : 
Seven Springs Mountain Resort, Inc., : 
formerly known as Seven Springs Farm, Inc.: 
                : 
Appeal of: Tinkey Cemetery : 

BEFORE:   HONORABLE RENÉE COHN JUBELIRER, President Judge
               HONORABLE PATRICIA A. McCULLOUGH, Judge
               HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

## OPINION NOT REPORTED

**MEMORANDUM OPINION BY**
**SENIOR JUDGE LEADBETTER**          **FILED: November 16, 2022**

      The focus of the above-captioned appeals is Neals Run Road, a rural single-lane gravel road that traverses through property owned by Seven Springs Mountain Resort, Inc. and abuts properties owned by Gabriel and Gloria Hudock.[1]

---

[1] In June 2021, this Court consolidated the above-captioned appeals.

Tinkey Cemetery is located to the west of the Hudocks' properties and depends on Neals Run Road for access.

In the appeal with this Court docketed at No. 321 C.D. 2021, the Hudocks appeal from an order of the Court of Common Pleas of Fayette County denying-in-part and granting-in-part their exceptions to the report of a Board of Viewers appointed by the trial court. The Board recommended that a portion of Neals Run Road be vacated pursuant to the act commonly known as the Private Road Act (PRA).[2] In No. 391 C.D. 2021, Tinkey Cemetery appeals from the trial court's order denying its emergency petition to intervene in the litigation initiated by the Hudocks. In addition, we consider Tinkey Cemetery's application to quash appeal. We affirm both of the trial court's orders and deny the application to quash.

The pertinent background is as follows. "Neals Run Road . . . traverses [generally east-west] through a mountainous area of Saltlick Township located in Fayette County with a small portion thereof located in Somerset County, being [in] Seven Springs Borough and Middle Creek Township." (April 15, 2020 Bd. Decision at 76-77; Reproduced Record "R.R." at 738a-39a.) On its western end in Fayette County, Neals Run Road is essentially an off-shoot road from the paved public road known as Indian Head Road, terminating there when traveling westward. (*Id*. at 78; R.R. at 740a.) On its eastern end, Neals Run Road terminates at County Line Road in Somerset County. There, Neals Run Road is known as Kate Henry Road. (*Id*. at 78-79; R.R. at 740a-41a.)

The Hudocks own real property in Saltlick Township, Fayette County, including 543 Neals Run Road (Parcel ID 31-21-0003) and an adjacent property that they subdivided in 2011 with the County's approval, both abutting the road on the

---

[2] Act of June 13, 1836, P.L. 551, *as amended*, 36 P.S. §§ 2731-2891.

2

south (Parcel ID 31-21-0003-01 through 07).[3] (*Id.* at 29; R.R. at 691a.) In addition to Tinkey Cemetery, the other properties located on the western portion of Neals Run Road to the west of the Hudocks' properties include those of Brian Kalp, the McHolmes, and Bruce Jones. Neals Run Road runs through Seven Springs' property, which surrounds the aforementioned properties, and the resort is the only abutting property owner on the eastern portion.

In the 1970s, Seven Springs developed ski slopes (North Face) extending over the eastern portion of Neals Run Road thereby closing that portion during ski season. For many years, Saltlick Township informally acquiesced to the arrangement before entering into a formal agreement in 1991 thereby granting Seven Springs a license to obstruct the eastern portion of Neals Run Road with man-made and natural snow and to prevent vehicular traffic thereon from November 15 to April 1.[4] The eastern boundary of the Hudocks' property is the western boundary of the North Face, where Seven Springs places one of two gates to block vehicular access to the slopes. The second gate is located to the east in Somerset County near North Gate Road, a private road traversing Seven Springs' property between Neals Run

---

[3] Promoting the lots as ski-in/ski-out was part of Mr. Hudock's plan in undertaking the subdivision. (Nov. 6, 2019 Bd. Hr'g, Notes of Test. "N.T." at 152-53; Suppl. R.R. "S.R.R." at 366b-67b.)

[4] The duration of the obstruction was subject to the provision "that if the road is open to regular traffic during the first few days of deer hunting season, then Seven Springs shall keep [it] open during [those] first few days . . . at approximately the time of the Thanksgiving holiday." (Oct. 1, 1991 Road Use License and Maintenance Agreement, Ex. 1 of Sept. 6, 2016 Pet. for Appointment of Bd. of Viewers, ¶ 2; R.R. at 518a.) In addition, acknowledging the presence of "a cemetery to which access may be needed from time to time during the winter months . . . Seven Springs agrees to provide access . . . in the event of such necessity." (*Id.*, ¶ 3.) "In the alternative, Seven Springs shall request Saltlick Township to open the road from the other end and bill Seven Springs for the cost . . . ." (*Id.*) The reimbursement was to be no less than $100 per occurrence. (*Id.*)

Road and County Line Road. Seven Springs opens North Gate Road intermittently for use by its employees and guests. (*Id*. at 53; R.R. at 715a.)

During the annual closure, the Hudocks and other property owners to the west must access their properties via the western portion of Neals Run Road. The western property owners testified that they had no issue with accessing their properties to the west during the annual closures, stating that "they have no problem getting in and out to the public road by going in the direction of Indian Head Road and that they don't use the eastern part very much . . . ." (*Id*. at 78; R.R. at 740a.) "[N]o one lives on the eastern portion . . . of Neals Run Road beyond the Hudock property and all the way through the balance of Fayette County and into some of Somerset County where the road is known as Kate Henry Road [and] where only one family resides." (*Id*. at 14; R.R. at 676a.)

In November 2015, the Hudocks filed a complaint in the Court of Common Pleas of Fayette County seeking an order that Saltlick Township maintain the eastern portion and enjoin the annual closure. The trial court denied the Hudocks' petition for a preliminary injunction, concluding that they failed to establish immediate and irreparable harm because they had owned their property for seven years under the same conditions. (Nov. 16, 2015 Trial Ct. Order at 1; R.R. at 150a.) Subsequently, the Hudocks petitioned Saltlick Township to vacate a portion of the road that runs through Fayette County pursuant to Section 2304 of the Second Class Township Code.[5] Saltlick Township denied the petition.

In September 2016, the Hudocks filed their petition for appointment of a board of viewers pursuant to the PRA. They requested that the portion of Neals

---

[5] Act of May 1, 1933, P.L. 103, *as amended*, added by the Act of November 9, 1995, P.L. 350, 53 P.S. § 67304.

Run Road beginning at the westernmost boundary of their property and continuing east up to the boundary line between Saltlick Township and Seven Springs Borough be vacated pursuant to Sections 1 and 18 of the PRA, 36 P.S. §§ 1781 and 1981. (Sept. 6, 2016 Pet. for Appointment of Bd. of Viewers, ¶ 25; R.R. at 515a.) Section 1 affords common pleas courts the power to appoint viewers. Section 18 affords them the authority "to change or vacate the whole or any part of any private or public road . . . whenever the same shall become useless, inconvenient or burthensome . . . ." 36 P.S. § 1981. In the case of vacation, the Hudocks further requested that the trial court decree that the vacated portion become a private right-of-way for their benefit pursuant to Section 1 of the Act of April 17, 1929, P.L. 530 (Act of 1929), 36 P.S. § 2781. (Sept. 6, 2016 Pet. for Appointment of Bd. of Viewers, ¶ 26.)

Following a view and hearings conducted over four days in November and December 2019, the Board concluded that the closed road portion of Neals Run Road had become useless, inconvenient, or burdensome and, accordingly, recommended vacation under Section 18 of the PRA. The vacated portion was to include "that portion of Neals Run Road from the gate on the western side of the North Face where it is currently located on Seven Springs property and running to the east to the point where Neals Run Road meets with North Gate Road." (April 15, 2020 Bd. Decision at 84; R.R. at 746a.) The Board did not include that portion of Neals Run Road in front of the Hudocks' property as they had requested. The Board also recommended that the trial court order Seven Springs to "provide for the appropriate cul-de-sac in order to comply with any Federal, State or Local Laws to be placed on the western part of its property where the gate is located to the west." (*Id*. at 85; R.R. at 747a.) However, the Board declined to recommend that a private right-of-way be granted across the closed road portion.

5

In April 2020, the trial court issued a decree *nisi*[6] confirming the report and advising the parties that it would become a final decree in the absence of exceptions being filed within thirty days. The Hudocks filed three exceptions to the report: (1) exception to the Board's failure to recommend a right-of-way along the vacated eastern portion of Neals Run Road by operation of law for the use and benefit of the Hudocks and others; (2) exception to the Board's recommendation of a cul-de-sac; and (3) exception to the Board's contingent recommendation that the longstanding practice between Saltlick Township and Seven Springs to close Neals Run Road be continued if the trial court declined to accept the Board's primary recommendation.

The trial court denied the first exception, granted the second, and determined that the third was moot. On February 16, 2021, the trial court confirmed the April 2020 decree *nisi* and declared the same as a final decree. In Tinkey Cemetery's ensuing emergency petition to intervene, Tinkey Cemetery averred that it first discovered the litigation on March 2, 2021. Nonetheless, the trial court denied the petition. The Hudocks appeal from the trial court's order adjudicating the exceptions and Tinkey Cemetery appeals from the trial court's denial of the emergency petition to intervene.

## I.

We first consider Tinkey Cemetery's August 2022 application to quash appeal pursuant to Pennsylvania Rule of Appellate Procedure 1972(a)(7), a catch-all provision providing that an appeal may be quashed for any reason not enumerated

---

[6] The Latin word for "unless," *nisi* means "([o]f a court's *ex parte* ruling or grant of relief) having validity unless the adversely affected party appears and shows cause why it should be withdrawn." *Adams Twp. v. Richard Twp.*, 154 A.3d 250, 259 n.11 (Pa. 2017) [quoting Black's Law Dictionary 1207 (10th ed. 2014)].

but appearing on the record.[7] Tinkey Cemetery filed this application immediately before the Court's September argument session despite previously asserting in the statement of jurisdiction segment of its brief that this Court had jurisdiction over a final order of the trial court. (Dec. 20, 2021 Definitive Br. of Tinkey Cemetery at 1.) In any case, Tinkey Cemetery argues that, especially in light of the fact that the trial court cancelled a July 2020 jury trial in the equity case, there was no final order entered in that action, the one from which it and the Hudocks appealed.

Tinkey Cemetery's position is without merit. Over two years before cancelling the jury trial, the trial court, upon consideration of the record and the Hudocks' motion to consolidate, consolidated for discovery and trial the equity action (No. 2212 of 2015 GD) and the Fayette County board of viewers PRA action (No. 1750 of 2016 GD).[8] (Nov. 21, 2018 Trial Ct. Order; R.R. at 607a.) Of course, a consolidation for those purposes does not necessarily mean that one case is

---

[7] Rule 1972(a) provides that "any *party* may move" for a disposition on motion. Pa. R.A.P. 1972(a) (emphasis added). Section 102 of the Judicial Code defines "party" as "[a] person who commences or against whom relief is sought in a matter." 42 Pa.C.S. § 102. It is unclear whether a litigant denied intervention below has standing to file an application to quash in an appellate court. Pennsylvania Rule of Appellate Procedure 501 requires an appellant to have party status in order to appeal. Given the fact that Tinkey Cemetery in its appeal to this Court is challenging the trial court's denial of its emergency petition to intervene, we consider the application to quash.

[8] The Hudocks initiated a second board of viewers action in the Court of Common Pleas of Somerset County at No. 587 Civil 2016 for that portion of Neals Run Road/Kate Henry Road located in that county. The Somerset County action and the one in Fayette County at No. 1750 of 2016 GD were already coordinated pursuant to Pennsylvania Rule of Civil Procedure 213.1, Pa.R.Civ.P. 213.1, pertaining to coordination of actions in different counties. (May 25, 2018 Trial Ct. Order at 1-2; R.R. at 595a-96a.) Fayette County's coordination order, a certified copy of which was filed in Somerset County, also stayed the Somerset County action pending the Fayette County board of viewers' recommendation. (*Id*. at 1; R.R. at 596a.) The last docket entry in the Somerset County matter is in March 2021 and provides: "Per phone call of Fayette County Prothonotary's Office-the [Fayette County] report of board of view[ers], decree *nisi* and opinion and order are to be returned to Fayette County Prothonotary's Office for appeal purposes." (Somerset Common Pleas Docket Entries, No. 587 Civil 2016; S.R.R. at 9c.)

7

subsumed in the other. Confusingly, however, the docket entries for what started as the Fayette County board of viewers PRA action stop on February 19, 2020 (No. 1750 of 2016 GD, Docket Entries; S.R.R. at 1c-3c) and all further orders related to the PRA action were entered on the equity action docket, including the decree *nisi* and its confirmation as a final decree. When the trial court cancelled the jury trial, it did so in consideration of its decree *nisi*. (July 1, 2020 Trial Ct. Order, Ex. 3 to Tinkey Cemetery's Aug. 18, 2022 Appl. to Quash.) This Court is persuaded that the trial court's finalization of the viewers action rendered the equity action moot and that the trial court considered that action to be disposed of by its confirmation of the decree *nisi*. Consequently, although the better practice would have been to enter the decree *nisi* and its confirmation on the board of viewers docket and to dismiss the equity action, on its own separate docket, as moot, we believe the order appealed from operated as a final order disposing of both cases.[9] Tinkey Cemetery's application to quash is without merit.

## II.

We next consider whether the trial court erred in denying Tinkey Cemetery's emergency petition to intervene, the focus of its appeal at No. 391 C.D. 2021. Pennsylvania Rule of Civil Procedure 2328 requires a proposed intervenor to attach the pleadings that it would file if permitted to intervene. Pa.R.Civ.P. 2328. Tinkey Cemetery attached a motion to strike and/or open judgment and a petition for a second view.

---

[9] Notwithstanding the fact that there were two related dockets below, the Hudocks filed their notice of appeal with this Court under only one lower court docket number. In *Commonwealth v. Walker*, 185 A.3d 969, 976 (Pa. 2018), the Supreme Court held that when "one or more orders resolves issues arising on more than one docket or relating to more than one judgment, separate notices of appeals must be filed." Because the Hudocks technically did not appeal two dockets in one appeal, we conclude that the *Walker* rule does not apply here.

8

Tinkey Cemetery filed its petition after the trial court's confirmation of the decree *nisi* but before the appeal period had expired. In pertinent part, Pennsylvania Rule of Civil Procedure 2327 provides as follows as to when and who may intervene:

> At any time during the pendency of an action, a person not party thereto shall be permitted to intervene therein, subject to these rules if
>
> . . . .
>
> (4) the determination of such action may affect any legally enforceable interest of such person whether or not such person may be bound by a judgment in the action.

Pa.R.Civ.P. 2327. However, even an otherwise qualified petitioner may be denied intervention if "the intervention will unduly delay, embarrass or prejudice the trial or the adjudication of the rights of the parties." Pa.R.Civ.P. 2329(3).

As a threshold matter, the trial court concluded that Tinkey Cemetery failed to satisfy Rule 2327's requirement that a petition for leave to intervene must be filed during the pendency of an action. Tinkey Cemetery argues that the instant matter remained pending because the appeal period had not yet expired, citing Section 5505 of the Judicial Code's provision that a trial court has broad discretion to modify or vacate its own orders for thirty days thereafter. 42 Pa.C.S. § 5505.

Tinkey Cemetery's position is without merit. The fact that the trial court retained discretion to modify or vacate its order for thirty days is not determinative as to whether the matter remained pending. A matter is "pending" until a final adjudication has been issued. *Barasch v Pa. Pub. Util. Comm'n*, 540 A.2d 966, 969 (Pa. Cmwlth. 1988) [(citing *Sch. Dist. of Robinson Twp. v. Houghton*, 128 A.2d 58 (Pa. 1956)]. "After final adjudication, a petition to intervene is too late." *Newberg by Newberg v. Bd. of Public Educ.*, 478 A.2d 1352, 1354-55 (Pa.

9

Super. 1984). Accordingly, a petition to intervene filed after the entry of a decree should be denied absent extraordinary circumstances. *Jackson v. Hendrick*, 446 A.2d 226, 230 (Pa. 1982); *Pendle Hill v. Zoning Hearing Bd. of Nether Providence Twp.*, 134 A.3d 1187, 1197 (Pa. Cmwlth. 2016). Because the trial court had already entered a final order, Tinkey Cemetery had to establish extraordinary circumstances warranting the grant of intervention.

Tinkey Cemetery argued that the lengthy duration of the litigation, without its participation, and its presence in the road use and maintenance agreement, constituted extraordinary circumstances warranting the grant of an untimely petition for intervention. However, extraordinary circumstances "cannot pertain to the merits or the substantive defense the intervenor seeks to litigate." *Pendle Hill*, 134 A.3d at 1197. "[I]t is the circumstances proffered to excuse the untimely filing that must be scrutinized." *Id.* To that end, Tinkey Cemetery seems to argue only that it did not discover the litigation until March 2, 2021.

The question of intervention is within the sound discretion of the court below. *Lewis v. Pine Twp.*, 367 A.2d 742, 744 (Pa. Cmwlth. 1976). In addition to determining that the matter was no longer pending when Tinkey Cemetery sought intervention, the trial court concluded that "Tinkey Cemetery has no property right or interest in the vacated portion of Neals Run Road, [it] is not an indispensable party, and [its] ingress and egress to the cemetery is not restricted." (March 17, 2021 Trial Ct. Order at 2; R.R. at 1052a.) Further, the duration of the litigation actually supports denial of the petition. In addition to the trial court's efforts, the Board undertook a view and conducted hearings over four days. The latter proceedings involved numerous witnesses, including homeowners, who invested time, effort,

10

and/or other resources into these matters. Accordingly, we conclude that the trial court did not abuse its discretion in denying the petition to intervene.

## III.

In the appeal at No. 321 C.D. 2021, the Hudocks appeal from the trial court's order denying-in-part and granting-in-part their exceptions to the Board's report. The Hudocks' first two arguments are interrelated because they both question the breadth of the trial court's authority when conducting appellate review of a report from a board of viewers.[10] The Hudocks argue that the trial court exceeded its statutory authority when it deviated from the relief requested in the petition to vacate Neals Run Road and that it erred in accepting only a portion of the Board's report. Specifically, they argue that the trial court was empowered to accept or reject the Board's report only as a whole, should not have adopted bifurcated relief, and erred in adopting the Board's recommendation to vacate Neals Run Road without simultaneously granting the private road/right-of-way.

The Hudocks' argument misstates the trial court's authority in these cases. Pursuant to Section 1 of the Act of 1929, the trial court adopted the Board's recommendation not to grant a private right-of-way. Section 1 provides as follows:

> Retention of vacated public road as private road
> Whenever viewers, appointed by the court of quarter
> sessions to view and vacate any public road within this

---

[10] "In reviewing a [b]oard of [v]iew's decision, '[a]ppellate review is limited to ascertaining the validity of the [b]oard's jurisdiction, the regularity of proceedings, questions of law[,] and whether the [b]oard abused its discretion.'" *In re Adams*, 212 A.3d 1004, 1012 (Pa. 2019) (citations omitted). An abuse of discretion occurs when the board's decision shows "manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support as to be clearly erroneous." *Paden v. Baker Concrete Constr., Inc.*, 658 A.2d 341, 343 (Pa. 1995).

11

Commonwealth,[11] shall find and report that there is no necessity for such public road, but shall recommend in their report that the route thereof, or of any portion thereof, be and remain a private road, *upon the approval of their said report and the confirmation thereof by the court and the vacation of said public road, the court shall have power to enter a decree that the route of such abandoned public road, or any portion thereof, so recommended for a private road, shall be and become a private road, of the width of twenty-five feet, for the use and benefit of the owners of lands through or along which it passes*, to be maintained and used as private roads are now maintained and used under existing laws.

36 P.S. § 2781 (footnote and emphasis added).

As the trial court determined, "[t]he statute is not mandatory that upon the Court's vacating of a public road that the same automatically becomes a private right-of-way." (Feb. 16, 2021 Trial Ct. Op. at 5-6.) The plain language of Section 1 of the Act of 1929 affords the trial court discretion to "enter a decree that the route of such abandoned public road, *or any portion thereof*, so recommended for a private road, shall be and become a private road[.]" 36 P.S. § 2781 (emphasis added). The phrase "any portion thereof" also implies a possibility of "no portion thereof." Where the language of a statute is clear and unambiguous, the words are not to be disregarded under the pretext of pursing its spirit. Section 1921(b) of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1921(b). It is only when the language is not explicit that the court should seek to determine the legislature's intent through consideration of statutory construction factors. 1 Pa.C.S. § 1921(c).

---

[11] "Section 4 of the Schedule to the Judiciary Article of the 1968 Constitution abolished the quarter session courts." *In Re Vacation of Portion of Twp. Rd. 164*, 518 A.2d 2, 3 n.1 (Pa. Cmwlth. 1986). The jurisdiction once exercised by the quarter session courts went to the common pleas courts. *Id.*

In addition, had the trial court entered such a decree for a private road, it would have applied only to "the owners of lands through or along which it passes[,"], 36 P.S. § 2781, which would not have included the Hudocks. The trial court observed that the Hudocks were not abutting landowners to the portion of Neals Run Road subject to vacation. Instead, Seven Springs was the only landowner of the surrounding lands on the vacated portion. (Feb. 16, 2021 Trial Ct. Op. at 6.) Section 3 of the Act of February 27, 1849, P.L. 90 (Act of 1849), provides for the reversion of vacated land to the abutting property owner, stating: "Whenever any highway, street, court, or alley, shall be vacated, or hath been vacated, by authority of law, the adjoining owner or owners shall be authorized to reclaim the same . . . ." 36 P.S. § 2131. At all events, the trial court cited the Board's reasoning that "a right-of-way was not necessary as all properties in the vicinity of the vacated road were accessible via the public roadway, Indian Head Road." (Feb. 16, 2021 Trial Ct. Op. at 5.)

In sum, the trial court conducted an appropriate appellate review of the Board's decision. Taken to its logical conclusion, the Hudocks' argument would result in the trial court not considering the Board's recommendations individually and rubber stamping all of them, including the cul-de-sac recommendation, to which the Hudocks excepted. This interpretation is not consistent with the trial court's appellate review and case law acknowledging the authority of trial courts to disregard discrete portions of reports where the viewers overstepped their jurisdiction or abused their discretion. *See*, *e.g.*, *In re Limestone Rd.*, 67 Pa. Super. 105, 109 (1917) (where board of viewers was appointed to consider only the single question of whether a partially opened road should be changed or vacated, that part of their report recommending that the road should be vacated *and* relocated was

13

deemed surplusage and Superior Court affirmed the lower court's decision disregarding that portion of the report where the viewers overstepped their jurisdiction and confirming the remainder of the report as modified).

**IV.**

The Hudocks next argue that the trial court exceeded its statutory authority when it vacated the small segment of the closed portion of Neals Run Road located in Somerset County.[12] As noted, in addition to the September 2016 board of viewers action filed in Fayette County, which is the subject of the present appeal, the Hudocks also filed a November 2016 board of viewers action in Somerset County and secured a coordination of the two actions pursuant to Pennsylvania Rule of Civil Procedure 213.1, pertaining to coordination of actions in different counties.[13] (May 25, 2018 Trial Ct. Order at 1-2; R.R. at 595a-96a.) However, only the Fayette County case advanced and the Board of Viewers vacated the very small piece of the road lying in Somerset County in its decision. We conclude that the Hudocks waived this issue by failing to raise it during the underlying proceedings. *Soska v. Bishop*, 19 A.3d 1181, 1190 (Pa. Cmwlth. 2011) (where landowners failed to include issue in their exceptions to the board of viewers report, the issue was waived for appellate review).[14]

---

[12] The length of the Somerset County portion is approximately one-tenth of one mile.

[13] *See supra* note 8 detailing the history of the Somerset County action.

[14] Were the issue not waived, we would nevertheless affirm. Rule 213.1(d)(3) provides: "If the court orders that actions shall be coordinated, it may . . . (3) make any other appropriate order." Pa.R.Civ.P. 213.1(d)(3). The rationale for Rule 213.1 is to "avoid[] multiple trials and proceedings in these actions and the resultant economy to both parties and the judicial system." Pa.R.Civ.P. 213.1 (Explanatory Comment-1990). Hence, subsection (d)(3) affords an opportunity for creative judicial management. *Id*. The order is "limited only by its function of providing a fair and efficient method of adjudicating the controversy." *Id*. There is no temporal limitation in the subsection that prevents such creativity in the resolution of a stray outstanding issue in a coordinating **(Footnote continued on next page…)**

**V.**

The Hudocks next maintain that the trial court erred in failing to apply specific provisions of Pennsylvania's road laws, including those pertaining to the composition of a board of viewers and demands for a second view. However, they also waived any challenges as to the Board's composition and the opportunity for a second view. The trial court requested that the parties select "an attorney, a realtor, and an engineer for a Board of Viewers from the appropriate list available at the Fayette County Prothonotary's Office." (Oct. 26, 2018 Trial Ct. Order at 1; R.R. at 597a.) When the parties were unable to come to an agreement, the trial court in accordance with the aforementioned order made the appointment. (March 25, 2019 Trial Ct. Order at 1; R.R. at 608a.) The Hudocks failed to object to the composition of the board of viewers at any point during the underlying proceedings and raised the issue of the absence of a surveyor for the first time on appeal. Similarly, they waived any issue pertaining to the demand for a second view. As an attachment to the emergency petition to intervene, Tinkey Cemetery attached a proposed petition for a second view. Notwithstanding the Hudocks' attempted joinder in "intervenor" Tinkey Cemetery's petition for a second view, raising a request in this manner via an entity that was denied intervention below does not constitute a party raising and/or preserving an issue on appeal.

**VI.**

Finally, the Hudocks contend that the trial court erred in refusing to enjoin the annual winter closure of the eastern portion of Neals Run Road for Seven Springs' private purposes. As the trial court determined, because it accepted the

---

jurisdiction. In addition, we perceive no legitimate reason for relegation of this matter for further proceedings in the Court of Common Pleas of Fayette County.

15

Board's recommendation to vacate the closed portion, the third exception was rendered moot. (Feb. 16, 2021 Trial Ct. Op. at 7.)

## VII.

In light of the foregoing, we affirm the relevant orders of the trial court and deny Tinkey Cemetery's application to quash.

_____
**BONNIE BRIGANCE LEADBETTER,**
President Judge Emerita

Judge Dumas did not participate in the decision for this case.

16

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Gabriel Hudock and Gloria Hudock,    :
husband and wife,    :
                Appellants    :
   :
              v.    : No. 321 C.D. 2021
   :
Saltlick Township, Pennsylvania and    :
Seven Springs Mountain Resort, Inc.,    :
formerly known as Seven Springs Farm, Inc. :

Gabriel Hudock and Gloria Hudock,    :
husband and wife    :
   :
              v.    : No. 391 C.D. 2021
   :
Saltlick Township, Pennsylvania and    :
Seven Springs Mountain Resort, Inc.,    :
formerly known as Seven Springs Farm, Inc. :
   :
Appeal of: Tinkey Cemetery    :

# **O R D E R**

AND NOW, this 16th day of November, 2022, the order of the Court of Common Pleas of Fayette County at issue in No. 321 C.D. 2021, denying-in-part and granting-in-part Appellants' exceptions to the report of an appointed board of viewers, is hereby AFFIRMED. The order of the Court of Common Pleas of Fayette County at issue in No. 391 C.D. 2021, denying Tinkey Cemetery's emergency petition to intervene, is also AFFIRMED. Further, the application to quash filed by Tinkey Cemetery is hereby DENIED.

 

_____
**BONNIE BRIGANCE LEADBETTER,**
President Judge Emerita